## EX PARTE W. E. GREGORY.

1. MUNICIPAL CORPORATIONS—TAXING POWER.—No county, city, or town in this state has power to levy an occupation tax exceeding one-half the rate levied by the state, nor to tax property in excess of one-half the state tax, except for the purposes, and under the limitations, specified in section 9 of Article 8, of the Constitution of 1876.

2. SAME.—See the opinion for the reasons why a city "license tax" on vehicles used for hire is held to be an occupation tax, and to be void because in excess of half the rate levied by the state.

*Habeas corpus* sued out to the Court of Appeals

The case is fully and clearly stated in the opinion of the court.

*Flournoy & Scott*, for the relator.

A brief of authorities, without signature, was filed in behalf of the respondent.

WINKLER, J. The precise question raised by the petition of the relator and the answer of the respondent is as to the validity of the latter portion of a certain ordinance of the city council of the city of Galveston, which is in the following words :

" Every person engaged in running one or more hacks or omnibuses for the transportation of persons, for hire or for the use and convenience of the guests of hotels, shall pay a license tax of twenty dollars for each vehicle used in such business. Every person keeping one or more buggies for hire shall pay a license tax of five dollars for each buggy thus kept, and the cost of numbering, not to exceed twenty-five cents." Revised Ordinances, 276.

It is not questioned that the city council has authority to provide for and collect a license tax to an amount sufficient to meet the necessary expense of regulating and controlling the

48

proper use, or prevent the abuse, of the privilege of running hacks and other vehicles within the city. This has been specially provided for by an ordinance on the subject. See sec. 4, Art. 1, ch. 16, Rev. Ord. 171, amended by ordinance approved January 5, 1877. Nor is the subject of property tax involved, for the reason that this, too, is provided for. Charter, title 5, Arts. 1, 2. And, further, it is shown by the answer of the respondent, the chief of police, and by the copy of the writ attached, that the relator is held in custody on a charge of "running one hack, which is numbered 25, for the transportation of persons, for hire, without paying an annual license tax of twenty dollars, as required by law."

This license tax of $20 on a hack, provided for in the portion of the section first above set out, we understand to be neither a license proper and necessary to give control of and regulate the running of a hack for hire, nor yet a property tax. It can only be classed as an occupation tax.

An occupation tax is provided for, both in the Constitution of the state and in the charter of the city, and has, to our minds, been attempted by the ordinances of the city council. The only remaining question to be considered is as to whether the city council has acted in the matter within the bounds prescribed by the Constitution and laws now in force.

The provisions of the charter are to be found in title 5, page 41, Revised Ordinances. Section 3 of Article 3 authorizes the city council "to levy and collect taxes, commonly known as licenses, upon trades, professions, callings, and other business carried on." These provisions clearly apply to occupations. The section continues and authorizes the levy and collection "of taxes, commonly known as licenses," upon "carriages, hacks, coaches, buggies, drays, carts, wagons, and other vehicles used in said city, whether the same are for public or private use." This portion is

believed to authorize the city council to regulate the manner of using these vehicles, and could not be properly called an occupation tax, for it applies as well to vehicles used for private use as to those kept for the use of the public; and, inasmuch as it is elsewhere provided for taxing these articles as personal property, it can hardly be supposed that the legislature intended to burden the citizen further than as might be necessary to provide for the systematic control and management of this kind of property, with reference to the safety and good order of the public, and incidentally to demand the payment of a sum from each owner to meet the necessary expenses of this regulation.

We can only conclude that the framers of the charter, in this section and elsewhere, employed the terms *tax* and *license* without regard to their strict technical signification. This view is borne out by the further fact that, in the same section, it is further provided "that each and every person and firm engaged in the following trades, professions, callings, and business, among others, shall be liable to pay such license tax," etc. ; and in the succeeding section the charter goes on to enumerate the classes of persons and firms liable to pay this *license tax*, and, among others, mentions "every person or firm keeping a livery-stable or stables," etc., thus seeming to return to and provide for the collection of a tax on occupations—an *occupation* tax.

This exaction, then, of $20 for the privilege of running a hack, or $5 for running a buggy, within the city, for hire, must have been intended as an occupation tax, and not as a license proper to meet the necessary expense of numbering, registering, and otherwise providing for their government.

To what extent, then, had the city council authority to go in taxing occupations—the occupation of the relator?

By the taxation and revenue Article of the Constitution (Art. 8, sec. 1) an *ad valorem* tax on property is pro-

vided for. A poll tax is also authorized, and the legislature "may also impose *occupation* taxes," and tax incomes, with certain restrictions and limitations not here necessary to be specially noticed.

Whilst the power to tax is very comprehensive, still, it is not an unlimited power. By the 9th section of the same Article of the Constitution it is provided:

" The state tax on property, exclusive of the tax necessary to pay the public debt, shall never exceed fifty cents on the one hundred dollars valuation, and no county, city, or town shall levy more than one-half of said state tax, except for the payment of debts already incurred, and for the erection of public buildings, not to exceed fifty cents on the one hundred dollars in any one year, and except as in this Constitution is otherwise provided."

And by the latter clause of section 1 of the same Article it is provided that " the occupation tax levied by any county, city, or town, for any year, on persons or corporations pursuing any profession or business, shall not exceed one-half of the tax levied by the state for the same period on such profession or business."

By the 3d section of the act entitled " An act to regulate taxation, and fix the rate of the same" (Session Acts, Fifteenth Legislature, p. 243), it is provided " that there shall be levied on and collected from every person, firm, company, or association of persons pursuing any of the following named occupations, an annual tax (except where herein otherwise provided) on every such occupation or separate establishment, as follows :   *   *   *   *   for every livery or feed-stable one dollar for each stall, and one dollar for each hack, buggy, or other vehicle."   *   *   *

Agreeably to the law and the provisions of the Constitution above quoted, neither the city of Galveston nor any other city, town, or county has power to tax the property or the occupation of a citizen to an extent beyond one-half

the amount levied by the state, except as provided in the 9th section of the 8th Article of the Constitution above set out, or to levy and collect of the proprietor of a livery or feed stable more than 50 cents for each stall, and 50 cents for each buggy, hack, or other vehicle.

The ordinance of the city council of the city of Galveston, above set out, in so far as it seeks to compel the relator to pay a larger sum than half the amount of the state tax for the same occupation, must be held void because contrary to the law and in violation of the letter and spirit of the Constitution.

Because there is no authority of law for the detention of the relator, judgment will be entered commanding the chief of police of the city of Galveston to release and discharge William E. Gregory, the relator herein, from custody.

*Ordered accordingly.*